Thank you. Our last case for this day is United States v. Stephen, No. 24-1654. And we'll hear from counsel. Morning, Mr. Campbell. Good morning, Your Honor. My name is Matt Campbell, Federal Public Defender for the District of the Virgin Islands. On behalf of Treasurer Stephen, I'd like to reserve five minutes for rebuttal. That'll be granted. Can I ask you one question right off the bat? It's not really substantive either. How did this get before Judge Miller? Did you all consent to a jurisdiction? Your Honor, that's the case for Wednesday. Ah, shoot, you're right. Sorry. Okay, never mind. But remember that for Wednesday. Okay, I'll ask you Wednesday. No, understood. Anyway, there was a significant amount of common ground for the two issues that we're raising, the Rule 29 and the Rule 33 issues. For that reason, I'd like to address those overlapping issues in the context of the motion for a new trial under Rule 33. You've got a pretty high-heeled decline here, right? I mean, with the standard and all. I recognize the standard that we're dealing with. The district court erred in denying a new trial and in the motion for judgment of acquittal, and the government's defense of the district court's decision contains multiple flaws. And again, in the context of the motion for a new trial, I think one of the differences that we have with the government is over the idea that the jury's verdict is hopelessly inconsistent. I understand that that in and of itself is not a ground for relief. However, in the context of the motion for a new trial, we do believe it's an important factor. Here we had a conspiracy that was alleged from November 1st to November 29th, with the events being testified by the trial largely being on the 29th. While there was argument and a lack of evidence about any conspiracy existing between the 1st and the 28th, that would not have provided grounds for an acquittal. As we all know, conspiracies need not be spelled out in writing. They need not be long in time. Frankly, they need not be explicitly proven but can be inferred. Circumstantial evidence such as acting in concert can be enough. There was certainly evidence that Mr. Robinson and Mr. Stephen were acting in concert on the 29th. So it is our position, unlike the government, that clearly if the jury disbelieved Mr. Stephen's testimony, there was certainly evidence from which a conspiracy could be inferred. But the jury didn't find that. Moreover... Could that be because of either leniency or a mistake? It could be, Your Honor. I agree with that. It could be. But I think that is a factor that we need to look at in terms of whether a new trial should be granted. I'm not arguing that that in and of itself grants a motion for a new trial. But it is a factor that it casts some doubt on the validity of the verdict. And I do, before I forget, want to mention one of the other areas that we disagree with the government on is this idea that the jury necessarily rejected Mr. Stephen's testimony. That's simply not true because much of Mr. Stephen's testimony went to the concept of duress. And there are several factors in duress, including the fact that an individual has a reasonable opportunity to extricate themselves or flee. It doesn't take advantage of that opportunity. That is an objective standard. It is not a subjective, the person didn't feel it. The second thing is that the individual did not recklessly place themselves in the situation to begin with. Again, that is done by an objective standard. So it is entirely possible in this case for the jury to have believed every word that came out of Mr. Stephen's mouth, while still ultimately not finding the duress to be proven based on those two objective factors. I want to point that out before I forgot. I want to talk about the lack of evidence of knowledge of a controlled substance. There was no direct evidence that Mr. Stephen knew that there was cocaine in the bags. None. This is not a case where there were text messages that were from phones or there was phone contact or the like. The only evidence about phones was that there were two that they took, but they never introduced any information. Well, this is a circumstantial evidence case. I mean, is it or not? Couldn't the jury fairly infer that what was going on based on going to a dark beach at night, with maybe Robinson's suspicious behavior, couldn't a reasonable jury infer that there was a drug transaction going on? You're right. Short answer, yes. Slightly longer answer. Yes, a jury could infer. I think if there was no testimony about what was in the bags, then maybe a jury could infer that cocaine was in the bags, but respectfully, that's not the inquiry. Couldn't Mr. Stephen necessarily infer that? Well, doesn't Caraballo Rodriguez's case make clear that Mr. Stephen didn't have to know that cocaine was in the bag or just that it contained a contraband? Your Honor, as I read Caraballo Rodriguez, and I believe that the district court and perhaps the government misread Caraballo Rodriguez, it talks about the notion of if there's several competing possibilities, that for Rule 29 purposes, it's permissible to draw the conclusion that it is cocaine in this case or whatever is the substance at issue. But where I think the district court erred was it took the particular portion of Caraballo Rodriguez and interpreted that language about even if there's two possibilities that are equally possible, it's permissible to draw the ultimate inference. And it applied that post taking the evidence in a light most favorable to the jury. And that can't be right because the court can either look to, it could be cocaine or money, let's just say, pre-taking the evidence in a light most favorable to the government and say, okay, but now I'm going to take it in a light most favorable to the government and then conclude the only real remaining factor is cocaine. And I think that's permissible. Where I think the district court erred is, frankly, it took the evidence in a light most favorable to the government, said there's still two possibilities, but I'm going to, that is sufficient under Caraballo Rodriguez. And I don't think that's what Caraballo Rodriguez says. Because if it did, if after taking the evidence in a light most favorable to the government, there's still two reasonable possibilities, that's a not guilty verdict by definition. So while I recognize what Caraballo Rodriguez says, I think that the portion relied on by the district court ultimately is pre-looking at the evidence in a light most favorable to the government, not post. Because if it was post, it would be diminishing the beyond reasonable doubt requirement. Essentially, the problem that I have with the government's analysis, and I agree that there are a number of cases that say large quantities of drugs can, you can infer knowledge or suspicious behavior or the like. I agree that those cases exist. I'm not contesting the existence of those cases. But the government puts no limitation on what it is saying in this case. If in this case, if the facts were slightly different in that law enforcement had simply come upon the pickup truck because it had broken down because the oil pan had fallen out and found the drugs in it. And that was all the evidence they had about the events of the 29th. And then they put on agent to testify about the drug flow and how drug dealers behave. According to the government, that's enough. According to the government, the only facts that they would need to show where the two people were in a truck and it was cocaine and they get a conviction. That can't be right. There must be some limitation on inferences drawn. And again, I think it goes back to what I was just speaking about with Caraballo Rodriguez. It's saying if after the inferences are drawn in the government's favor, there are still two reasonable possibilities. Then the evidence is insufficient because Caraballo Rodriguez in the district court had used the phrase game changer. Caraballo Rodriguez said it was bringing in line some. Limited set of conspiracy cases, possession and intent of conspiracy cases with the longstanding principles that each element must be proven beyond a reasonable doubt. So we believe that the district court erroneously gave Caraballo Rodriguez certain effects that were not warranted for those reasons. I do want to briefly touch on the lack of evidence of intent to distribute. Again, I understand that there are cases that talk about inferring the intent to distribute from possessing large quantities of cocaine and the like. The difference here regarding the intent to distribute is at no time was Mr. Stephen was acting. Mr. Robinson was in possession of the substances. So in order for there to be intent to distribute, there had to be evidence that Mr. Stephen intended for those drugs to go to someone beyond Mr. Robinson. Otherwise, there's no intent to distribute. And there was no such evidence. There was no such evidence indicating that this isn't a transfer from the fastboat to Robinson's vehicle. Wasn't that sufficient? The movement transfer of the duffel bags? No, Your Honor, because at the moment, at the moment that those drugs are being possessed, they were being jointly possessed. Or constructively possessed, however you want to look at it, by Mr. Stephen and by Mr. Robinson. So there's there's no intent at that point shown to distribute beyond those two people. And I mean, I just want to take what you're saying. I just want to understand precisely what you're saying. So you recognize that there are cases that suggest that you can look at quantity to determine whether or not there is an intent to distribute. But your possession is that there are two people who possess and they have two point one million dollars of cocaine because the two of them are there and there's a conspiracy charge. There can't be an end. We can't do the inference of an intent to distribute. Instead, we treat it like they're going to individually independently have two point one million dollars worth of cocaine for personal use. I don't know that we would have to necessarily decide exactly who is for personal use, but I guess I'm trying to figure out the the the way if we agree with you, where that would lead us in the case law in instances like this where you have a conspiracy charge of a large amount of cocaine and both people are there. What's the what's the conclusion? What's the logical conclusion? Where is where is this where you're asking us to go? Where does that lead? I think in this context, I'm not sure that it would go as far as we might think it would, because the issue here is just because two people are in the same place at the same time does not mean that they both necessarily have the same intent. Yeah, but that may be right as to the question that was asked. But what about wasn't Mr. Steven properly charged as an aider and a better and as an aider and a better? Yeah. Doesn't that really answer or trump your joint possession argument? I understand the court's question. It's an excellent question. But even under aiding and abetting liability. The individual in this case, Mr. Steven would still have to have this specific intent that the cocaine be delivered to somebody beyond Mr. Aiding and abetting doesn't simply say, I literally help somebody by carrying a bag from a boat to a truck or from the truck to the bushes. Aiding and abetting says what I did. Well, I did with the intent of furthering the other person's crime. So if Mr. Steven, that would be under count one, under count two, which is still alive because he was convicted of that and quitted under count one. It's as to his own possession, which he was aiding and abetting. He was an aider and abetting an aider and a better on a possession with intent to deliver George. Correct. But certainly neither he or Robinson were going to consume that quantity of cocaine. I've already personally used in other cases. I'm not arguing here. But my point is he would have to have the specific intent to help. Mr. Robinson. Who would then be the possessor with intent to distribute. So I guess what I'm getting at is. And that's a slightly different set of facts where Mr. Steven knew what Mr. Robinson was going to do with the substances. But all Mr. Robinson, but all Mr. Steven was going to do was help offload him from the boat, help put him in the truck. I would agree that if there was evidence that Mr. Steven knew what Mr. Robinson was going to do with it and agreed to help for fifteen hundred bucks so that Mr. We would be in a different situation. But the record is silent as to what Mr. Steven knew about Mr. Robinson's intent at all. And I would argue that based on Mr. Steven's testimony, at least the record indicates all he wanted to do was get out of there. So he didn't get Mr. Robinson. You're saying that Mr. Stevens had to know what Robinson was going to do with the books. I don't want to go too far and say he had to know exactly what was going to happen, but he had to at least know that Mr. Robinson intended to distribute them. So he had to know what was going to happen. So if he had known that there was two point one million dollars of I think it was heroin in the bags. Cocaine, I'm sorry, cocaine in the bags. He also had to know that Mr. Robinson intended to distribute that as opposed to, I guess, personal use. Are you saying something different? Well, he had. Sure, he did. He would have had to know. That the drugs were to be distributed and he would have to have the intent to aid in that. That's what aiding and abetting liability says, that you have the intent to aid in the underlying offense, whether you're doing it yourself or not. So, now, we could split hairs as to exactly how much Mr. Steven could infer or not. But under aiding and abetting liability, he has to intend to further the underlying offense. That's black letter law. You're in effect saying there's insufficient evidence to convict him as an aider and abetter. Yes. And did you ever raise that in your brief before this court? Your Honor, respectfully, I don't think he was charged and the case law is clear that there doesn't even have to be an argument that somebody is an aider and abetter in a pleading, excuse me, in the information or the indictment. He was charged and what we challenged is he had no intent that anything be distributed beyond the two of them. That's an element of aiding and abetting liability. It's an element of direct liability. That's what we argued. There is no forfeiture. There is no waiver because we directly argued that he had no intent. And that's all. All right, Castle, we'll hear from you on rebuttal. Let's take it. We'll get you out of Syria. Good morning. Adam Sleeper, Assistant United States Attorney, Adam Sleeper for the United States. I'm going to address the knowledge issue first because I think knowledge is relevant to the intent to distribute. I hope you'll address as well your adversaries reading of Caraballo Rodriguez. Absolutely. OK, I think there's essentially or the government admits there's essentially four reasons that there's sufficient circumstantial evidence that the defendant had knowledge here. One is the quantity and value of the cocaine that was in the defendant's personal possession. That's 210 kilograms of two point one million dollars. The second is the suspicious circumstances on a beach known for drug trafficking. After 10 p.m., met a vessel traveling without navigation lights, obtained the duffel bags off that vessel and then fled when police officers attempted to stop them. Now, I know defense counsel challenges the fleeing aspect of that. It was Robinson that was fleeing. The only basis for that is Trevor Stephen's own testimony, which the jury could have disbelieved. This case is, for those reasons, very similar to Burgos Montanez case where there was the defendant put a heavy fuel tank on a boat, was found on beach near 87 kilos of cocaine, fled and a panel of this court found that there was sufficient evidence that of his knowledge. The third element, the third factor is drug trafficking patterns. That's that the testimony and trial was that cocaine is trafficked from the east side in through the east side of St. Thomas and then out the west, whereas to Puerto Rico, whereas money comes in from Puerto Rico. This occurred on the east side of the island. The agent testified that's a well-known drug sort of receipt geographic area, I guess. Your Honor, that's the drug flow of the drugs come up from South America. The money comes back down. It is essentially a particular beach. Yes, that particular beach. That's that's my recollection of the testimony. I know defense counsel raises a concern that Trevor Stephen didn't know that. I don't believe that that's necessarily the test. I think the case that the government said in its brief was Castillo out of the circuit, which talks about if there is a smell of something that could be used to mask drugs, that's sufficient. But if you look at the Castillo case, there's no nothing required there for the evidence. Defendant knows that that's something that's used to mask drugs. Basically, what the whole thing is there is that there's some sort of suspicious circumstance which links up with something related to drug trafficking. And that's a factor that can be considered. And I think what hasn't been mentioned here, but it's very, very important, is that the defendant took the stand here. He testified. He told a very implausible story, essentially, that he was threatened at gunpoint simply so he could help two others carry bags in a daisy chain. This wasn't consistent with agent Lucas experiences and undercover and is supervising confidential informants. And it wasn't mentioned during the approximately 45 minutes of pre Miranda silence. Essentially, what the defendant said was they gratuitously exposed threatened him with a gun to do something they could have done on their own in a drug transaction for two point one million dollars. OK, that's immensely implausible. The jury was credited. It was certainly entitled to disbelieve that testimony. And under this court, Mr. Ervin, that was additional affirmative evidence that. The defendant had knowledge, Mr. Sleeper. I want to focus on the rules. For the trial. So, first of all, you let's look at the totality of the evidence as a factor. And you argue that there's sufficient circumstantial evidence. And that there was a substantially high value on the drugs. But to the contrary, opposing counsel would argue that there's a lack of knowledge and intent. But add to that the fact that there's at least an arguable inconsistent verdict and also add to that the jury had struggles reaching the verdict. And in fact, they were deadlocked on account. All right. Didn't say which count they were deadlocked on. They were deadlocked on account. OK, so. And don't those factors all taken together, all taken together. Raise at least a question of whether or not the interest of justice provision under Rule 33 should be applied here. And if they do, the district court determined there wasn't an interest of justice. How do we review that? What's our what's our standard review? Is it plenary or is it abuse of discretion? There's a lot in that question, but if you could go down that road. Certainly. And it's it's abuse of discretion. I think this isn't a case, for example, where the court found for a new trial. The government is in some way contesting the question of whether it was not permissible for the district judge who had heard all of the testimony, who had seen the witness on the stand and was able to make his own credibility determinations, whether it was impermissible to reach the decision. You know, to talk a little bit about the recorded inconsistent verdict, certainly I'm not going to contest that it's difficult to factually swear the two verdicts. But I think that what does need to be pointed out is that there were specific arguments about the conspiracy charge that were made, such as that there was no evidence of from the first to the 28th. Now, I agree the jury is a legal matter, could have still found a conspiracy based solely on on the 29th. But I think it's inconsistent to point out to the jury that there's no evidence of this essentially asking them to acquit, whether or not that is or is not a valid legal argument. And then when they do acquit, come back and say it's an inconsistent verdict. And as to the difficulty and the deadlock on account, frankly, I just don't know that much can be read into that because it's not clear which account that was. It may very well have been the conspiracy account, and they may have been acquitted on this conspiracy account. And I think that the but it also could have been the possession of intent to deliver. It could have, Your Honor, but there's just there's no indication as to what that was. And so, you know, again, I know with no indication of what that was, I think it's tough to read too much into that. And then especially when we're under abuse of discretion review and we're dealing with. Would you agree that in this case, the district court did not specify why it didn't find the interest to justice requiring or requiring a new trial. So there's nothing in the record for us to determine why the district court didn't say interest of justice apply here. Your Honor, I think that there was in my recollection is there was some discussion of Trevor Stevens testimony, and I think the primary focus was on whether or not he believed Trevor Steven. And that was sort of the motivating factor. But I would agree that he didn't necessarily run through each and everything that that defense counsel has mentioned here on the rule 33. I know the court wanted me to talk a bit more about her bio Rodriguez. I think with that. Your adversary took a somewhat narrow view of that. How do you respond to that? Yes. Your Honor, I think it has to be, you know, we're on sufficiency of the evidence review. So the discussion has to be the evidence most favorable to the evidence viewed in the light most favorably government. I think all that language is, you know, I certainly understand what the defense counsel is saying. I think what it's really saying is, if there is enough evidence to have an inference that the defendant knew it contained drugs. And there's also enough evidence that the defendant would have known it contained other contraband. And it turns out the bag actually contains drugs. And it's a sufficiency of the evidence review. It's not irrational for the jury to determine that there was a permissible inference that it contained drugs. Maybe you could address Judge Fisher brought up aiding and abetting, I believe. And you would argue in your brief that the Stephen forfeited his argument with respect to requisite knowledge and intent under underlying aiding and abetting. But your adversary pointed out in response that, hey, you have proven knowledge at all. How do you respond to that? Your Honor, I think his argument was there was no intent to distribute. And the aiding and abetting is that there was no intent to assist the Robinson or to aid and abet Robinson in distributing. I think that's a subtly different argument. Frankly, if the court didn't find this forfeited, that's not the issue. But I think, again, here there is. Just to run through the factors, there was a sufficiently large quantity of cocaine, which is multiple orders of magnitude higher than this court has determined. This court has determined is sufficient for the inference. There is also, as I mentioned, testimony from Trevor Stephen, which the jury was entitled to not believe it permitted, which would also be treated as substantive evidence, which combined with the quantity, which was enough for the inference of intent to distribute. I do also want to, I think the main gist of the defendant's argument is this, you know, as the court has pointed out, this argument that there was not, and I see I'm much over time. No, no, actually, I think you're still in time. Okay, thank you. Is that this idea that if it's jointly possessed, then the amount is not sufficient. And I think the first helpful thing is to look at the cases that the defendant cites for this proposition. And that's similar, which is an unpublished case out of this circuit in Swiderski. I don't think we need to challenge similar here. I know there was a vigorous dissent by Judge Porter. Government may have different views of that, but those cases don't even apply here, because those cases say when there's joint possession and there's an intent for them to be used for personal, joint possession for personal use is not distribution. Here, I don't think anybody can contend that 210 kilograms of cocaine worth $2.1 million was for the purposes of joint possession. So then the question is, well, it has to be going to someone else. And is there enough evidence for the defendant. Is there enough evidence that the defendant knew and intended that. And I think here there is just no basis in any case law for determination that, well, there was someone else present so you don't know if he was, if he actually wanted that to be distributed. I haven't found any case law showing that. You know, I think, sad enough, the D.C. Circuit, Ruben Colbert, unpublished case out of the 9th, Rouse, unpublished case out of the 9th. All these cases indicate that that's not the rule. You know, if you're there, if you have it, and you're participating in the possession of the cocaine, whether you're intending to possess it or not, certainly that large quantity. And especially here, we also have the entitlement to disbelieve the defendant's testimony. There's sufficient evidence for the intent to distribute. Unless the court has any further questions for me, that's all I have, and the governor will request that the court defer. Thank you, counsel. We'll hear from you. Good morning, again. I know the court's being patient with me, so I will simply touch on some of the points that were just discussed. The government cited four factors supporting the verdict. One was the suspicious circumstances. Again, it's our position that the suspicious circumstances are suspicious to agents who necessarily know about drug patterns, but not necessarily to Mr. The only evidence about Mr. Stephen being unable to flee or something to that effect was from Mr. Stephen. Not true. In fact, the testimony from the agents clearly showed, as well as the video, that Mr. Robinson was the driver of the truck. He was the one that was the driver at all times. And in fact, there was evidence showing that it was his truck that was registered to a particular corporation that he was an officer of. There was also a business card showing that had his name on it. So the evidence, other than Mr. Stephen, was completely consistent that Mr. Robinson at all times was driving and was the one fleeing. We do believe that the Montanez case that the government cited in that case, the individual at issue fled, not other people or not a car that was being driven by the individual defendant. But in that case, the or somebody else, but the individual defendant fled. The government talks a lot about in its brief and it mentioned here the drug trafficking patterns. Again, Mr. Stephen had no knowledge of drug trafficking patterns. None of that evidence establishes that there's knowledge on his part. Even the Castillo case that the government cites with the smell of a masking agent, the idea there is that was a suspicious circumstance for something like luggage or the like, that there's some smell. We don't have a smell here. We don't have those kinds of circumstances. The government did mention the fact that Mr. Stephen took the stand and the jury was free to disbelieve him. And that is clearly true. However, we did talk about the train case and the cases cited therein. And I don't think the case law stands for the fact that just because the defendant testifies, the jury can disbelieve his testimony and believe the exact opposite and that that somehow creates a sufficiency of the evidence issue. I also want to point out in regard to that factor, the government cited his pre-Miranda silence. But the facts of the case show that the pre-Miranda silence occurred at the scene where they were arrested. And although they were ultimately put in different cars, Mr. Robinson was present at all times. And according to Mr. Stephen's testimony, he had already threatened both Mr. Robinson and his family. And the evidence showed that Mr. Robinson knew where Mr. Stephen lived. I wanted to address briefly, Judge Fischer had asked some questions about the Rule 33 motion in particular. And it was a discussion about the notion of abuse of discretion. And I agree that the standard review is an abuse of discretion standard, but that doesn't mean that the evidence doesn't get to be weighed. And I think it's important if we look at the denial of the motion, which occurred at the first truncated sentencing hearing when the district court announced its ruling. And that's at 1027 to 1033. The district court never discusses a lack of evidence of intent to distribute. Never mentions it. In a rather cursory fashion, talks about the knowledge of whether or not it was cocaine, but it completely ignored what I would argue is actually the main factor that we cited. That there's no evidence under either, under any view that Mr. Stephen had any intent that this cocaine be distributed any further than the two of them. The court never discusses it. So in looking at abuse of discretion, this isn't just a case where the district court engaged in a completely thorough discussion of all the factors. And now we have to look at abuse of discretion. I think it's procedural error not to at least address it. The government talked about the inconsistency of the verdict and that we argued that there was no evidence of a conspiracy between the first and the 28th. That is true. That was mentioned in closing argument, but it was never argued that the conspiracy had to exist from the first to the 28th. The argument was there's no evidence before that night of a conspiracy and there's no evidence of an agreement that night. That was the argument. So we never made that argument. That was a grounds for acquittal. I believe that's all I had, but I'm happy to answer any other questions and I thank you for your patience. Thank you, counsel. We'll take this case under advisement. I'll ask the court to adjourn.